IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.              CRIMINAL NO. 02-19 ERIE

CURTIS LASHAWN DUCK


INITIAL APPEARANCE


Proceedings held before the HONORABLE

SUSAN PARADISE BAXTER, U.S. Magistrate Judge,

in Courtroom B, U.S. Courthouse, Erie,

Pennsylvania, on Friday, June 21, 2002.


APPEARANCES:
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

        CURTIS LASHAWN DUCK, Defendant herein, appearing
        Pro Se.

Ronald J. Bench, RMR - Official Court Reporter

2

1              P R O C E E D I N G S

2

3              (Whereupon, the proceedings began at 2:17 p.m., on

4    Friday, June 21, 2002, in Courtroom B.)

5

6              THE CLERK:  The case before the court is United

7    States of America versus Curtis Lashawn Duck.  It's docketed at

8    Criminal No. 02-19 Erie.  Representing the government is Chris

9    Trabold; the defendant is unrepresented at this time.

10             THE COURT:  I'm required to ask you first, Mr. Duck,

11    whether you understand English?

12             THE DEFENDANT:  Yes.

13             THE COURT:  We're going to do a few things today.

14  We're going to make sure you understand your rights.  That you

15  understand the charges against you.  We'll get you an attorney

16  if you need one.  And we'll take care of any bond issues.  This

17  proceeding starts your speedy trial clock running.

18      First of all, I want you to know you have the right

19  not to make any statements here today.  In fact, any that you

20  make here could be used against you in another hearing.

21      You also have the right to an attorney that you

22  choose, one that you hire.  If you can't afford an attorney or

23  do not have one, the government will provide one, do you

24  understand that?

25      THE DEFENDANT:  Yes.


3


1      THE COURT:  Do you have a copy of the indictment

2  with you?

3      MR. TRABOLD:  I just provided Mr. Duck with a copy

4  of the indictment.

5      THE COURT:  All right.  I'm going to ask the U.S.

6  Attorney to explain to you the charges against you.  He will

7  also explain to you the maximum possible penalties should you

8  be convicted on all charges.  That's the worst case scenario,

9  it's important you understand that as well.  So follow along

10  there with the indictment.  Mr. Trabold.

11       MR. TRABOLD:  Thank you, your Honor.  Mr. Duck, I'll

12  read the indictment in a moment, you can follow along with me

13  as I go through it.  The indictment reads as to Count One that

14  the grand jury charges:  And then Roman Numeral I.  The

15  conspiracy and its objects.

16       "1.  From in or around August 2001 to in and around

17  September 2001, in the Western District of Pennsylvania, the

18  defendants, Tracy Lamar Steele, also known as Joe Hill, Curtis

19  Lashawn Duck, Annette Lucas, Maranda Bishop, Erica Dunston, and

20  Twanda Renee Davis, and others both known and unknown to the

21  grand jury, knowingly, willfully and unlawfully conspired and

22  agreed together to commit offenses against the United States,

23  that is:

24       (a)  Falsely making or forging any endorsement or

25  signature on a Treasury check or bond or security of the United

4

1  States, in violation of Title 18, United States Code, Section

2  510(a)(1);

3      (b) Passing, uttering or publishing, or attempting

4  to pass, utter, or publish, any Treasury check or bond or

5  security of the United States bearing a falsely made or forged

6  endorsement or signature, in violation of Title 18, United

7  States Code, Section 510(a)(2);

8      (c)  unlawfully buying, receiving, concealing or

9  unlawfully having in their possession, any letter, postal card,

10  package, bag or mail, or any article or thing contained therein

11  which has been stolen, taken, embezzled, or abstracted, knowing

12  the same to have been stolen, taken, embezzled, or abstracted,

13  in violation of Title 18, United States Code, Section 1708.

14      II.  Manner and means by which the conspiracy was

15  carried out.

16      2.  That it was a part of the conspiracy that:

17      (a)  On or about August 31, 2001, Tracy Lamar

18  Steele, also known as Joe Hill, and Curtis Lashawn Duck, came

19  into possession of numerous stolen United States Treasury

20  checks, which had been stolen from a United States Postal

21  Service mail truck on August 31, 2001, which was located at the

22  corner of East 11th and Ash Streets, in the City of Erie, at

23  the time of the theft;

24       (b)  from in and around August 2001, to in and

25   around September of 2001, while in possession of the stolen

5

1   United States Treasury checks, Steele solicited Erica Dunston,

2   Maranda Bishop, and Annette Lucas to help cash stolen checks;

3       (c)  After Dunston, Bishop and Lucas agreed to

4   assist Steele in cashing the stolen checks, Steele would

5   provide them money for the purpose of obtaining false picture

6   identification cards with names matching the names on the

7   stolen checks;

8       (d)  After Dunston, Bishop and Lucas agreed to cash

9   the stolen checks for Steele, they would travel with Steele,

10   who was accompanied by Duck on at least one occasion, to Money

11   Mart at 929 State Street in the City of Erie, for the purpose

12   of obtaining false picture identification cards matching the

13   names on the stolen checks;

14       (e)  After the fraudulent picture identification

15   cards were obtained at Money Mart, Steele, Duck, Dunston,

16   Bishop and Lucas, would travel to various businesses within the

17   City of Erie for the purpose of using the fraudulent picture

18  identification cards to cash the stolen United States Treasury

19  checks;

20      (f)  Dunston, Bishop and Lucas would fraudulently

21  endorse the United States Treasury checks and would then

22  attempt to cash or cash the stolen United States Treasury

23  checks.

24      (g)  Steele solicited Twanda Renee Davis to help him

25  cash stolen Social Security checks.  Steele offered Davis money

6

1  to deposit Social Security checks into Davis's bank account at

2  National City Bank, and then withdraw the money from the Social

3  Security checks and give it to Steele.

4      III.  Overt Acts.

5      3.  In furtherance of the conspiracy, and to effect

6  the objects thereof, the defendants, Tracy Lamar Steele, also

7  known as Joe Hill, Curtis Lashawn Duck, Annette Lucas, Maranda

8  Bishop, Erica Dunston, and Twanda Renee Davis, and other both

9  known and unknown to the grand jury, did commit and cause to be

10  committed, the following overt acts, among others, in the

11  Western District of Pennsylvania:

12        (a)  On or about August 31, 2001, Tracy Lamar

13    Steele, also known as Joe Hill, and/or Curtis Lashawn Duck,

14    came into possession of numerous stolen United States Treasury

15    checks which were stolen from a United States Postal mail truck

16    located, at the time of the theft, at the corner of East 11th

17    and Ash Streets, in the City of Erie;

18        (b)  On or about August 31, 2001, Tracy Lamar

19    Steele, also known as Joe Hill, contacted Erica Dunston for the

20    purpose of asking Dunston if she wanted to earn some money by

21    cashing stolen checks;

22        (c)  On or about August 31, 2001, Tracy Lamar

23    Steele, also known as Joe Hill, accompanied by Curtis Lashawn

24    Duck, who was driving, drove Erica Dunston to Money Mart at 929

25    State Street in the City of Erie;

7

1        (d)  On or about August 31, 2001, Tracy Lamar

2    Steele, also known as Joe Hill, gave Erica Dunston $10.60 and

3    sent Dunston into Money Mart to obtain a fraudulent photo

4    identification card in the name of Roxanna Henderson, which

5    Dunston was able to obtain;

6          (e)  On or about August 31, 2001, Tracy Lamar

7   Steele, also known as Joe Hill, accompanied by Curtis Lashawn

8   Duck, who was driving, drove Erica Dunston to Dee's Cigar

9   Store, 1705 State Street, City of Erie, so that Dunston could

10   cash a stolen United States Treasury check, No. 4023-82965467,

11   dated August 31, 2001, payable to the order of Ebony Henderson

12   for Roxanne R. Henderson, in the sum of $558.40;

13          (f)  On or about September 1, 2001, Tracy Lamar

14   Steele, also known as Joe Hill, went to the residence of

15   Annette Lucas and asked Lucas if she wanted to earn money

16   helping cash a stolen check, to which Lucas agreed;

17          (g)  On or about September 1, 2001, Maranda Bishop

18   traveled with Tracy Lamar Steele, also known as Joe Hill, and

19   Annette Lucas to Money Mart at 929 State Street in the City of

20   Erie for the purpose of obtaining a fraudulent picture

21   identification card for Lucas;

22          (h)  On or about September 1, 2001, Tracy Lamar

23   Steele, also known as Joe Hill, gave Annette Lucas money so

24   that she could obtain a fraudulent picture identification card

25   in the name of Tonya Jones;

1       (i)  On or about September 1, 2001, Annette Lucas

2  forged the signature of Tonya Jones on the back of a United

3  States Treasury check, No. 4023-82965537, dated August 31,

4  2001, made payable to Tonya Jones for Boston J. Brewington, in

5  the sum of $558.40;

6       (j)  On or about September 1, 2001, Tracy Lamar

7  Steele, also known as Joe Hill, approached Maranda Bishop and

8  promised Bishop money if Bishop would help Steele cash a stolen

9  check, to which Bishop agreed;

10      (k)  On or about September 1, 2001, Maranda Bishop

11  traveled with Tracy Lamar Steele, also known as Joe Hill, to

12  Money Mart, 929 State Street in the City of Erie for the

13  purpose of obtaining a fraudulent picture identification card

14  in the name of Ardensia Phillips;

15      (l)  In and around September 2001, Tracy Lamar

16  Steele, also known at Joe Hill, contacted Twanda Renee Davis

17  and asked Davis if Davis would help Steele cash some Social

18  Security checks, to which Davis agreed;

19      (m)  In and around September 2001, Tracy Lamar

20  Steele, also known as Joe Hill, paid Twanda Renee Davis

21  approximately $250 for depositing three stolen Social Security

22  checks into Davis's bank account at National City Bank."

23          This is all in violation of Title 18, United States

24  Code, Section 371.

25          Mr. Duck, I believe there's one other count in the


                                    9


1  indictment which relates to you.  That would be, I believe,

2  Count Seven.  Count Seven reads as follows:

3          "From in and around August 2001 to in and around

4  September 2001, in Erie County, in the Western District of

5  Pennsylvania, the defendants, Tracy Lamar Steele, also known as

6  Joe Hill, Curtis Lashawn Duck, Annette Lucas, Maranda Bishop,

7  Erica Dunston and Twanda Renee Davis, did unlawfully have in

8  their possession one or more letter, postal card, package, mail

9  and any article contained therein, specifically:

10          (a)  United States Treasury check, No.

11  4023-82965467, dated August 31, 2001, payable to the order of

12  Ebony Henderson for Roxanne R. Henderson, in the sum of

13  $558.40;

14          (b)  United States Treasury check, No.

15  4023-82965651, dated August 31, 2001, payable to the order of

16  Ebony Henderson for Ryan M. Henderson, in the sum of $558.40;

17        (c)  United States Treasury check, No.

18  4023-82965410, dated August 31, 2001, payable to the order of

19  Ebony Henderson for Reshema L. Henderson, in the sum of

20  $558.40;

21        (d)  United States Treasury check, No.

22  4023-82965537, dated August 31, 2001, payable to the order of

23  Tonya Jones for Boston J. Brewington, in the sum of $558.40;

24        (e)  United States Treasury check, No.

25  4023-82965514, dated August 31, 2001, payable to the order of


10


1  Ardensia Phillips, in the sum of $558.40;

2        (f)  United States Treasury check, No.

3  2047-47726312, dated August 31, 2001, payable to the order of

4  Julie Mosakowski for Amanda J. Mosakowski, in the sum of $856;

5        (g)  United States Treasury check, No.

6  4023-82965587, dated August 31, 2001, payable to the order of

7  Jacqueline Eisert, in the sum of $558.40;

8        (h)  United States Treasury check, No.

9   4023-82965290, dated August 31, 2001, payable to the order of

10  Christine A. Paolello, in the sum of $558.40;

11      which had been stolen, taken, embezzled and

12  abstracted from and out of the United States mail, well knowing

13  the same to have been stolen, taken, embezzled and abstracted.

14      In violation of Title 18, United States Code,

15  Section 1708."

16      Mr. Duck, do you understand the indictment as it's

17  been read to you?

18      THE DEFENDANT:  Yes.

19      MR. TRABOLD:  Let me go over the maximum penalties

20  with you.  Mr. Duck, I believe you're only facing charges in

21  this indictment at Counts One and Seven, so those are the

22  penalties I will explain to you.

23      As to Count One, the maximum penalties are as

24  follows:

25      A term of imprisonment of not more than five years;


11


1       A fine not to exceed $250,000;

2       And a term of supervised release of at least three

3    years.

4         As to Count Seven:

5         Imprisonment of not more than five years;

6         A fine not more than the greater of $250,000; or an

7    alternative fine in an amount not more than the greater of

8    twice the amount of loss in the case.

9         THE DEFENDANT:  Repeat that again.

10        MR. TRABOLD:  Under Count Seven the fine would

11   simply be whichever one of these is greater, $250,000 or twice

12   the amount of loss suffered with regard to the case.  Which in

13   this case would mean twice the amount of loss suffered by those

14   people who did not get their U.S. Treasury checks.

15        And you would also be facing at Count Seven a term

16   of supervised release of not more than three years.

17        Do you understand the maximum penalties, sir?

18        THE DEFENDANT:  Yes.

19        MR. TRABOLD:  Your Honor.

20        THE COURT:  Thank you, Mr. Trabold.  Do you have an

21   attorney, sir?

22        THE DEFENDANT:  No.

23        THE COURT:  Would you like the government to provide

24   one for you or do you want to hire your own?

25          THE DEFENDANT:  I'll go with the government for now.


12


1          THE COURT:  You can do that.  But if at any point

2  you do hire an attorney, let us know.  I need to take financial

3  information from you in order to determine whether you will pay

4  for some or none of the attorney's fees.  Okay.  I'll have you

5  placed under oath.

6          (Whereupon, the Defendant, CURTIS LASHAWN DUCK, was

7  sworn.).

8          THE COURT:  Are you currently employed?

9          THE DEFENDANT:  No.

10          THE COURT:  When was the last time, month and year,

11  that you were employed?

12          THE DEFENDANT:  I can't recall the month, it was

13  last year sometime.

14          THE COURT:  Are you married?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Does your wife have a job, does she

17  work?

18          THE DEFENDANT:  She works.

19       THE COURT:  Where does she work?

20       THE DEFENDANT:  Verizon.

21       THE COURT:  Verizon?

22       THE DEFENDANT:  Yes.

23       THE COURT:  How much does she earn per month, do you

24  know?

25       THE DEFENDANT:  It varies, between $900 and $1,200


13


1  every two weeks.

2       THE COURT:  In the last 12 months have you received

3  any income from any business or profession -- that would be

4  back to June, 2001?

5       THE DEFENDANT:  No.

6       THE COURT:  No?

7       THE DEFENDANT:  No, I don't think so.

8       THE COURT:  In the past 12 months have you received

9  any income in the form of rent payments to you?

10       THE DEFENDANT:  No.

11       THE COURT:  In the form of interest or dividends?

12       THE DEFENDANT:  No.

13      THE COURT:  In the form of government assistance?

14      (Defendant shakes head.)

15      THE COURT:  Have you any cash on hand?

16      THE DEFENDANT:  No.

17      THE COURT:  Do you have any money in checking or

18  savings accounts?

19      THE DEFENDANT:  No.

20      THE COURT:  Do you own any real estate?

21      THE DEFENDANT:  No.

22      THE COURT:  Any stocks or bonds?

23      (Defendant shakes head.)

24      THE COURT:  An automobile?

25      THE DEFENDANT:  No.


14


1      THE COURT:  Do you have any children, any

2  dependents?

3      THE DEFENDANT:  Yes.

4      THE COURT:  How many?

5      THE DEFENDANT:  Seven.

6      THE COURT:  And what are their ages?

7         THE DEFENDANT:  Two to ten.

8         THE COURT:  And do you support them?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Do they live with you?

11        THE DEFENDANT:  No, they don't live with me.  I'm

12   incarcerated right now for child support.

13        THE COURT:  Do you have court ordered child support?

14        THE DEFENDANT:  Yes.

15        THE COURT:  How much do you pay monthly on that when

16   you're not incarcerated?

17        THE DEFENDANT:  I'll say $450.

18        THE COURT:  Do you have any other bills, do you have

19   credit cards or anything?

20        (Defendant shakes head.)

21        THE COURT:  Any loans?

22        THE DEFENDANT:  Yeah.

23        THE COURT:  How much is that loan for, how much

24   money?

25        THE DEFENDANT:  It's for a thousand dollars.  Pays

15

1  all my support, it was like two, three years ago.

2      THE COURT:  How much do you have left -- it was

3  4,000 did you say?

4      THE DEFENDANT:  No, it was a thousand, I got a loan

5  for a thousand.

6      THE COURT:  Have you paid any on it?

7      THE DEFENDANT:  My dad is still paying on that, I

8  don't know what the average amount is, he cosigned for me.

9      THE COURT:  Any other debts, any other payments per

10  month?

11      THE DEFENDANT:  No.

12      THE COURT:  How long have you been incarcerated?

13      THE DEFENDANT:  February.

14      (Defendant executes Financial Affidavit.)

15      THE COURT:  Why are you incarcerated?

16      THE DEFENDANT:  I'm incarcerated on child support.

17      THE COURT:  Failure to pay child support?

18      THE DEFENDANT:  Yeah.

19      THE COURT:  Have you gone through your hearing at

20  the county yet?

21      THE DEFENDANT:  Yes.  August 1st is my date of

22  release.  I don't know when the hearing was.

23      THE COURT:  You're about to be released in August.

24  Mr. Trabold, what is your recommendation for bond?

25      MR. TRABOLD:  I think you can apply the same bond


16


1  for Mr. Duck as you gave to Mr. Steele.

2      THE COURT:  Do you want to revisit the issue in

3  August or are you all right with release?

4      MR. TRABOLD:  I don't really think, your Honor, in

5  good faith that I have a basis that you can detain him.

6      THE COURT:  All right.  I'm going to place a $25,000

7  OR bond.  Which means you pay nothing, but you will be

8  released.  And if you don't appear when you're supposed to

9  appear, you owe the government $25,000.  Do you understand how

10  that works.  You won't be released today, you're still

11  incarcerated by the state.  But these will be the conditions of

12  your release at that point.  Mr. Johnson, will you keep an

13  active watch on him or do you wait until August?

14      MR. JOHNSON:  We will wait until August.

15      THE COURT:  I will place these limitations on him.

16  Standard limitations of travel restrictions and report to

17  Pretrial Services, etc.  I'm going to set his arraignment, Mr.

18  Trabold, for next Wednesday, the 26th, at 10 a.m.  Anything

19  else, Mr. Trabold?

20          MR. TRABOLD:  No, your Honor.

21          THE COURT:  All right, we're adjourned, thank you.

22

23          (Whereupon, at 2:44 p.m., the proceedings were

24  concluded.)

25                  - - -


                            17


1               C E R T I F I C A T E
                _ _ _ _ _ _ _ _ _ _

2

3

4     I, Ronald J. Bench, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7

8

9

10  _____

11  Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25