1       IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2
   _____
3
   UNITED STATES OF AMERICA
4
                Plaintiff
5
       vs.     Criminal Action No. 02-19E
6
   CURTIS LESHAWN DUCK
7
                Defendant
8  _____

9
            PROCEEDINGS
10
      Transcript of hearing commencing on Monday,
11  August 8, 2005, United States District Court, Erie,
   Pennsylvania, before Honorable Maurice B. Cohill, Jr.,
12  District Judge.

13  APPEARANCES:

14  For the Government:   US Attorney's Office
                By:  Christian Trabold, Esq.
15
   For the Defendant:   Federal Public Defender
16            By:  Thomas Patton, Esq.

17         Reported by:
            Michael D. Powers, RMR
18           Official Court Reporter
            Room 5335 USPO & Courthouse
19           Pittsburgh, Pennsylvania 15219
            (412) 208-7572

20

21

22  Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

23

24

25

2

1           P R O C E E D I N G S

2  (Court convened on Monday, August 8, 2005, at 3:30 p.m.)

3           THE COURT:  Good afternoon.  Be seated, please.

4           MR. TRABOLD:  Good afternoon, Your Honor.

5           MR. MISKO:  Good afternoon, Your Honor.

6           THE COURT:  This is a hearing for Curtis LeShawn

7  Duck.  The Probation Department has filed a petition

8  indicating that Mr. Duck has violated his probation.

9           And with that, Mr. Trabold, do you want to proceed?

10          MR. TRABOLD:  Yes, Your Honor.  I don't believe

11  Mr. Duck is contesting the nature of the violations.

12          THE COURT:  Is that correct, Mr. Patton?

13          MR. MISKO:  Yes, that is correct.

14          THE COURT:  And as I understand it from the

15 petition that was filed or the letter of -- I guess you would

16 call it a petition that was filed by the Probation

17 Department, that he has had a number of dirty urine samples

18 and that this does amount to a Class C violation with respect

19 to the supervised release under which he had been operating

20 before.

21     Does Mr. Duck have anything or, Mr. Patton, do you

22 have anything to say on behalf of Mr. Duck with respect to

23 the violations here?

24     MR. PATTON:  Yes, Your Honor, a couple issues.  I

25 mean, look, it's painfully obvious to everyone here that

3

1 Mr. Duck has a cocaine addiction problem and it is obvious to

2 him as well.  He understands it.  He has the problem, too.

3 And, you know, he has done treatment, did treatment while on

4 supervised release, continued to have trouble afterwards and

5 is currently getting treatment here in town on an outpatient

6 basis.

7     I think experience has shown, not only in

8 Mr. Duck's case, but in this Court's experience in its years

9 on the bench, incarcerating someone isn't going to solve the

10   drug problem.

11       Mr. Duck was incarcerated for eighteen months and

12   it didn't cure his drug problem and sentencing him to prison

13   now isn't going to cure the drug problem.  I understand there

14   has to be a punishment for violating the terms of supervised

15   release.

16       But, sending him to prison isn't going to resolve

17   the root cause of his problems, which is a cocaine addiction,

18   that until Mr. Duck makes the personal decision that he is

19   going to stop using cocaine, isn't going to end.  And I would

20   suggest that even while I know that the number of

21   violations -- of positive urines were high, some of that is a

22   testament that -- Mr. Duck was trying to do treatment so he

23   was allowed to continue on supervision but he continued to

24   give positive urine samples.  But, the root problem is the

25   same.  He's a cocaine addict.

4

1       And so I would ask that when you consider the

2   length of sentence that needs to be imposed on Mr. Duck, that

3   you consider, whether you give him seven months, thirteen

4  months or four months that, in and of itself, isn't going to

5  solve his cocaine addiction problem.  And that if really what

6  we are doing here today is simply just punishing him for not

7  following the conditions of supervision, that a sentence

8  lower than seven months is sufficient to punish him for that.

9          And then, you know, there comes a question of

10  should he be placed on supervision after his revocation

11  sentence today?  And I would argue that he should not be.

12  The purpose of supervision is to help people integrate into

13  society and to try and provide them services that they may

14  need to do that.  That was done here and Mr. Duck was given

15  some drug programming, but I don't think that there is a

16  reason to continue to do this.

17          If Mr. Duck, once he gets done serving -- if you

18  sentence him to a term of imprisonment today, if he wants

19  treatment, it is going to be available for him whether he is

20  on supervised release or not.  He can go to AA meetings or NA

21  meetings or go out as a patient to Crossroads here in town.

22  He doesn't need to be on supervised release to get drug

23  programs.

24          I understand there is still the balance of

25  restitution that is owed.  And that if he is on supervision,

5

1  you know, at least efforts can be made to collect restitution

2  payments from him.  But, I would submit that putting someone

3  on supervised release basically just as a collection method

4  isn't really what supervised release is supposed to be about.

5  And in this case, there are other statutory remedies

6  available to try and collect unpaid restitution.

7       Under 18, United States Code, Section 3664(m), the

8  government can collect restitution through the framework set

9  out for the collection of unpaid fines, and also the victim

10 in this case, the Social Security Administration, can get an

11 abstract of the restitution order and by following

12 Pennsylvania State law can file that as a lien against

13 Mr. Duck.

14       So, you know, the statute sets up alternative ways

15 that both the victim and the government can attempt to

16 collect restitution complete, separate and distinct from

17 Mr. Duck being on supervised release.

18       So that even if the Court is concerned about the

19 unpaid restitution, the government and the Social Security

20  Administration have statutory remedies available to them that

21  they can use to try and collect the restitution in this case.

22       And, you know, furthermore, Mr. Duck has a pretty

23  sizable child support balance over in the county that is very

24  much in arrears.  And so any money that, you know, would not

25  be going to the Social Security Administration in

6

1  restitution, is money that the Erie County court system can

2  try and use to collect -- which they are.  They have been

3  very aggressively trying to collect child support payments

4  from Mr. Duck.

5       You know, he has been incarcerated in the past on

6  it and given purged amounts to make child support payments.

7  And so if he is not making restitution payments to the Social

8  Security Administration, Erie County Family Court is going to

9  be there to try and get whatever money he is earning and has

10  to apply to a very large balance of child support.

11       So, for those reasons, I would ask if you consider

12  giving Mr. Duck a sentence below the seven months, again,

13  because you don't need to have him seven months to punish him

14  for what he has done, to punish him for being a cocaine

15  addict.  You can accomplish that and send a message to the

16  other people that are on supervised release that there is a

17  consequence to violating your conditions.  That means you go

18  back to prison.  You can accomplish that with a sentence

19  that's less than seven months and that there is no need for

20  Mr. Duck to be back on supervised release after this.

21          And Mr. Duck would like to make a statement to Your

22  Honor.

23          THE COURT:  Mr. Duck.

24          MR. DUCK:  How you doing, Your Honor?  Basically, I

25  have a problem, a cocaine problem and, you know, I am sorry

7

1  for my actions.  I called around to get into a rehab.  This

2  one place in Toledo, Ohio, it's a ninety-day program.  My

3  insurance is paying for it, whenever I decide to go, all due

4  to the outcome of this situation here.

5          And I'm just sorry and I'd appreciate it if you can

6  show me leniency.  Thank you.

7          THE COURT:  Thank you.  Mr. Trabold, what is the

8  position of the government here?

9        MR. TRABOLD: Your Honor, the government is asking

10   that you impose a seven-month period of incarceration and

11   then a lengthy term of supervised release after that. Not

12   imposing supervised release on Mr. Duck is essentially giving

13   him an benefit for not following the requirements that he's

14   supposed to be following now and it removes any possibility

15   that the government has in obtaining any restitution payments

16   from Mr. Duck if you don't impose supervised release on him

17   after he's let out.

18        There are some options admittedly in the code for

19   obtaining restitution, but those are fanciful, in the extreme

20   in this case I would say. If Mr. Duck is not on supervised

21   release, there is nothing compelling him to work. He has

22   shown very little impetus on his own to go to work and the

23   only way for the government to continue to move him in the

24   direction of following requirements and being a productive

25   member of society is to keep him on supervised release. He's

                              8

1   shown no ability to abide by the requirements of normal

2   society when he is not on supervised release.

3        So, it's my opinion it's somewhat of a defeatist

4   attitude to give him a jail sentence and don't give people

5   any supervised release.  Essentially what counsel is saying

6   is we know he can't comply with any requirements placed on

7   him so just give him a jail sentence with the benefit of not

8   having to comply in the future with anything that the Court

9   may impose upon him.

10        Our position is, give him supervised release after

11  you give him his jail sentence.  Give him a chance to attempt

12  or at least make some effort of becoming a productive member

13  of society and at the same time give the government the most

14  efficient method of obtaining restitution payments from him

15  as well as he will have all the benefits of the services that

16  the Probation Office can provide for him once he is released

17  from jail.

18        To do anything less would be to give him a gigantic

19  benefit of not doing what he's supposed to do.

20        THE COURT:  I think I would like to talk to

21  Mr. Conde in chambers for a few minutes about this.  We'll

22  take a brief recess.  Nobody has to leave.  And as soon as I

23  talk to Mr. Conde, we'll be back in.

24  (Court recessed at 3:40 p.m.)

25  (Court reconvened at 3:45 p.m.)

9

1          THE COURT:  Be seated, please.

2          Well, the problem here is, Mr. Duck, you have got

3  apparently a serious addiction here.  We had a report that

4  there were thirteen, I think, indications of, in testing,

5  that you had been on illicit drugs.  And, of course, we don't

6  know how many other times when you weren't tested.  And I

7  don't see any choice but we have to impose the imprisonment

8  for violations but then also we'll follow that up with a

9  stint at the Community Corrections Center at Pittsburgh where

10  we have had some success with addiction.

11          So we, therefore, impose the following sentence:

12          The term of supervised release previously imposed

13  is revoked and defendant is sentenced to a term of

14  imprisonment of seven months.

15          Following that, Mr. Duck shall be placed on

16  supervised release for a period of twenty-nine months after

17  imprisonment with the same conditions and special conditions

18  as originally imposed by the Court on June 9th, 2003.

19          It's further ordered that as an additional

20  condition, Mr. Duck, upon his release from custody of the

21  Bureau of Prisons shall be immediately placed at the

22  Community Corrections Center located in Pittsburgh,

23  Pennsylvania, for a period of six months.

24         This will provide the defendant with a prolonged

25  period of structure that will perhaps convey to him that he

                                10

1  needs to begin abiding by the boundaries and limitations set

2  by society in order to become a productive member of society.

3         So, this does fall within the guidelines suggested

4  by the Sentencing Guidelines and we believe that this is the

5  best -- will be the post possible outcome for Mr. Duck.

6         So, does the government have any objection to him

7  waiting on going into custody or should he be taken today?

8         MR. TRABOLD:  Your Honor, I think he should be

9  taken into custody today.

10         THE COURT:  Mr. Patton?

11         MR. PATTON:  Well, Your Honor, we would obviously

12  ask that he be allowed to self-report and ask Your Honor to

13  consider, if you are going to give him six months at a

14  halfway house, that's a long stint at the halfway house, and

15  would ask that you consider reducing some the period of

16  incarceration and take into account -- I know the seven

17  months is the bottom of the guidelines range but six months

18  of community confinement is a long term.

19          THE COURT:  Yes.  But, that is different.  This is

20  treatment as well as just halfway house.  And there --

21  they've proven -- as I understand it, they have proven very

22  effective in getting their residents employment which

23  Mr. Duck badly needs.

24          And I'm going to leave it the way I've stated it,

25  and Mr. Duck will be taken into custody immediately.

                                11

1  (Court recessed on Monday, August 8th, 2005, at 3:50 p.m.)

2

3                    * * * * *

4          I certify that the forgoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7                         S/
                          Michael D. Powers
8                         Official Reporter

9    *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25